# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01078-NDF

RONNIE KEYES,

    Plaintiff,

v.

DEPUTY U.S. MARSHAL GILLIAN FLECK, in her individual capacity;
DEPUTY U.S. MARSHAL MICHAEL THOMAS, in his individual capacity; and
USMS CASE MANAGER DAVE JONES, in his individual capacity

    Defendants.

---

## JOINT CASE MANAGEMENT PLAN

1. The names of counsel who attended the Rule 26(f) meeting and assisted in developing the Case Management Statement:

| | |
|---|---|
| Liana Orshan<br>KILLMER, LANE & NEWMAN, LLP<br>1543 Champa Street, Suite 400<br>Denver, CO 80202<br>(303) 571-1000<br>lorshan@kln-law.com<br>*Counsel for Plaintiff* | Christopher Allman<br>Robin Anderson<br>Assistant United States Attorneys<br>District of Kansas<br>500 State Avenue, Suite 360<br>Kansas City, KS 66101<br>(913) 551-6730<br>chris.allman@usdoj.gov<br>robin.anderson@usdoj.gov<br>*Counsel for Defendants Fleck and Thomas* |

## 2.  PARTIES (INCLUDING PARENT CORPORATIONS)

Plaintiff:    Ronnie Keyes

Defendants:    Deputy U.S. Marshal Gillian Fleck, in her individual capacity;

Deputy U.S. Marshal Michael Thomas, in his individual capacity; and

USMS Case Manager Dave Jones, in his individual capacity.[1]

**3. STATEMENT OF THE CASE**

a. **Plaintiff's statement**: This action, which arises under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is based on events that began in June 2016, when, pending a federal criminal trial, Plaintiff Ronnie Keyes was detained at the Aurora Detention Facility ("ADF"). ADF is operated and managed by a private corporation, The GEO Group, Inc. ("GEO"), under a contract with the federal government. The United States Marshals Service ("USMS"), a federal law enforcement agency that has custody over all federal pretrial detainees, made the decision to house Mr. Keyes at ADF while Mr. Keyes was awaiting trial. During that time, the USMS retained custody over Mr. Keyes and had the authority to transfer Mr. Keyes elsewhere if Mr. Keyes's medical needs were being not being met at ADF.

Because Mr. Keyes is paraplegic, he has certain health complications and specific medical needs. When Mr. Keyes arrived at ADF, he informed GEO of what he required to stay healthy, and he repeatedly requested a pressure-relieving mattress, which minimizes the risk of pressure injuries (also called bedsores). It was never provided. As a result, Mr. Keyes began to develop pressure injuries, and the pressure injuries he had when he arrived got worse. Mr. Keyes's worsening condition was also due to the fact that the medical unit at the facility was not equipped to take care of the pressure injuries, nor was the medical staff properly trained in treating the pressure injuries.

---

[1] Plaintiff will be amending the Complaint before or soon after the initial pretrial conference to dismiss Dave Jones as a Defendant in this action.

2

Per the USMS prisoner healthcare standards, the USMS has the authority to acquire and pay for reasonable and medically necessary care to ensure the wellbeing of all pretrial detainees under the custody of the USMS. When the USMS designated Mr. Keyes to ADF, the USMS and the USMS Defendants were aware that Mr. Keyes had "extensive medical needs." Starting at the beginning of his detention at ADF, Mr. Keyes, his family members, and his criminal defense team repeatedly, for months, informed the USMS, including Defendants USMS Deputy Fleck and USMS Deputy Thomas, that GEO was not meeting his medical needs, a fact that the USMS and Defendants also would have learned from the USMS deputies who several times escorted Mr. Keyes to court appearances at which his attorneys raised the same complaints. Yet Defendants essentially ignored Mr. Keyes's complaints and continually refused to transfer Mr. Keyes to a hospital or another detention facility that could better meet his needs.

When Mr. Keyes's condition had deteriorated to such an extent that GEO had no choice but to take him to a hospital, the doctors were forced to amputate his leg to try to save his life. Mr. Keyes had also developed a bone infection in his pelvis. Since the amputation, Mr. Keyes has been in and out of the hospital while the doctors try to get the infection under control, and he has had multiple surgeries. However, doctors have informed him that there is almost no way to cure the infection at this point, and all treatment is designed to merely prolong his life, not save it.

Defendants' failure to take anything but a cursory look into the repeated complaints from Mr. Keyes, his family, and his criminal defense team about the medical care he was receiving from GEO constituted a deliberate choice to ignore the substantial risk that GEO was not meeting his serious medical needs. Rather than make any real effort to investigate whether any of Mr. Keyes's complaints were justified, the USMS Defendants relied exclusively on GEO's representations that Mr. Keyes was receiving adequate medical care. However, in light of GEO's long and widely

known and documented history of failing to provide adequate medical care to detainees at its facilities, with which Defendants were undoubtedly familiar, it was obvious that there was a substantial risk Mr. Keyes's serious medical needs were not being met. The USMS Defendants thus knew about such risk, yet they deliberately, recklessly, and—in light of GEO's history—unjustifiably chose to take GEO's representations about Mr. Keyes's medical situation at face value instead of independently determining whether GEO was providing adequate care. In doing so, the USMS Defendants were deliberately indifferent to Mr. Keyes's serious medical needs, and they are responsible for the dire consequences to Mr. Keyes's health that occurred as a result.

    b. **Defendants' statement**:

Plaintiff's claim is brought under the Fifth Amendment Due Process Clause for alleged deliberate indifference to his serious medical needs.  There is no *Bivens* remedy for this claim.  Plaintiff has not plausibly pleaded the elements of this claim, or the personal participation of Defendants Fleck or Thomas in this claim.  Moreover, Defendants Fleck and Thomas did not violate Plaintiff's rights, and their actions were justified and proper under the relevant law. Defendants Fleck and Thomas are entitled to qualified immunity and discovery should be stayed until that issue is resolved. Plaintiff is not entitled to injunctive or declaratory relief in this *Bivens* action.

    4. **STATEMENT OF JURISDICTION**

Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by the Equal Access to Justice Act, 28 U.S.C.S. § 2412, and 42 U.S.C. § 1988.  Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of

Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

### 5. PARTIES NOT YET SERVED

Dave Jones was not served because Plaintiff intends to file a motion to dismiss him from the lawsuit once the administrative stay is lifted.

### 6. PARTIES TO BE ADDED OR ANTICIPATED AMENDED PLEADINGS

Plaintiff intends to add a Federal Torts Claim Act ("FTCA") claim against the United States based on the conduct of the USMS once Plaintiff's administrative exhaustion requirement is satisfied. *See* 28 U.S.C. § 2675(a). Plaintiff presented his FTCA claim to the USMS on or about September 20, 2017, and thus anticipates seeking leave to amend his Complaint to add the FTCA claim against the United States in approximately five months.

### 7. DISPOSITIVE MOTIONS PENDING

Defendants Fleck and Thomas filed a Motion to Dismiss August 21, 2017. Eight days later, the case was stayed pending reassignment of the case to another court. Plaintiff has not filed a response and a revised briefing schedule has not been entered.

### 8. DISCOVERY – NATURE, TYPE AND LIMITATIONS

a. To the extent that discovery or disclosures involve information or records in electronic form, the Parties will take steps to preserve that information. The Parties do not anticipate extensive electronic discovery. The Parties agree that, to the extent feasible, the Parties will exchange information in PDF format.

b. The parties agree to take all reasonable steps to reduce discovery and reduce costs and to use a unified system of numbering for Exhibits.

c. The parties do not propose any modifications to the presumptive length of depositions contained in the Federal Rules. All depositions including all Fed. R. Civ. P. 30(b)(6) depositions shall be limited to 7 hours of deposition time.

d. Any modifications any party proposes on the presumptive numbers of depositions or interrogatories contained in the federal rules: The parties do not propose any modifications to the presumptive number of interrogatories and depositions contained in the Federal Rules. Plaintiff may serve 25 interrogatories on Defendants, collectively. Defendants, collectively, may serve 25 interrogatories on Plaintiff. The Parties are each limited to 10 depositions, including experts but excluding Parties.

e. Any limitations any party proposes on the number of requests for production of documents and/or requests for admissions: The parties propose that Plaintiff may serve 25 requests for production of documents and 25 requests for admission on Defendants, collectively. Defendants, collectively, may serve 25 requests for production of documents and 25 requests for admission on Plaintiff.

f. On August 22, 2017, Defendants filed a Motion to Stay Discovery on the grounds that Defendants are asserting a qualified immunity defense. Plaintiff opposes that motion, but has not yet filed a Response due to the administrative stay that was entered.

**9. RELATED CASES**

In *RONNIE KEYES v. THE GEO GROUP, INC., et al*, Adams County District Court Case No. 2017CV030166, trial is set for April 2 through April 13, 2018.

**10. CASE PLAN AND SCHEDULE**

Proposed specific dates for each of the following, keeping in mind that trial should occur within nine (9) months from the date of the Initial Pretrial Conference, unless there are unusual or

unique circumstances. Parties should be prepared to address any issues that require additional time at the Initial Pretrial Conference.

Response: Defendants believe this matter should be stayed pending resolution of the motion to dismiss. *See* doc. 18. Accordingly, Defendants suggest that the only deadlines set should be a briefing schedule for the pending motion to stay (doc. 18) and motion to dismiss (doc. 17). Defendants propose that, should the motion to stay be denied, the parties will confer and submit an updated joint case management plan to establish additional case deadlines within 14 days of any such ruling. Plaintiff opposes a stay and otherwise proposes the following dates. Defendants do not oppose the proposed deadlines, if this Court believes it necessary to set case deadlines before ruling on the pending motion to dismiss.

    a.    Dates for full and complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(C):

        Affirmative expert disclosures: **April 13, 2018**.

        Rebuttal expert disclosures: **May 14, 2018**

    b.    A deadline for the completion of fact discovery: **June 11, 2018**

    c.    A deadline for filing dispositive motions: **July 9, 2018**

    d.    A date for a dispositive motion hearing (the parties may choose not to have a hearing): The parties do not believe a hearing on the pending dispositive motion is necessary, absent a specific finding by the Court that oral argument would aid in deciding the motion.

    e.    A date for the final pretrial conference: _____

    f.    A date for trial: _____

11. The estimated length of trial and any suggestions for shortening the trial.

Response: **Seven (7) days**

12. The prospects for settlement, including any request of the Court for assistance in settlement efforts.

Response: Defendants believe settlement negotiations are premature until after a ruling on the pending motion to dismiss. If the pending motion to dismiss is denied, the parties will work together in good faith to determine whether the matter can be resolved. The Parties will promptly report any resolution of the case to the Court.

13. Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner.

Response:

APPROVED ON THIS 18th DAY OF OCTOBER 2017:

| | |
|---|---|
| *s/ Liana Orshan* | *s/ Christopher Allman* |
| David Lane | Christopher Allman |
| Liana Orshan | Robin Anderson |
| KILLMER, LANE & NEWMAN, LLP | Office of the United States Attorney for |
| 1543 Champa Street, Suite 400 | the District of Kansas |
| Denver, CO 80202 | 500 State Avenue, Suite 360 |
| (303) 571-1000 | Kansas City, KS  66101 |
| dlane@kln-law.com | (913) 551-6684 |
| lorshan@kln-law.com | chris.allman@usdoj.gov |
| *Counsel for Plaintiff* | robin.anderson@usdoj.gov |
| | *Counsel for Defendants Fleck and Thomas* |