IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RONNIE KEYES,<br><br>      Plaintiff,<br><br>vs.<br><br>DEPUTY U.S. MARSHAL GILLIAN FLECK, et al.,<br><br>      Defendants. | Case No: 17-CV-1078-NDF |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss.[1] The Court has reviewed the motion and is fully informed in the premises. The Court FINDS and ORDERS as follows.

### BACKGROUND

Plaintiff Ronnie Keyes brings a *Bivens* claim against United States Marshals Gillian Fleck and Michael Thomas. From June to November 2016, Keyes was a federal pretrial detainee. (Doc. 44 at ¶ 18). In 2006 Keyes was in a severe car accident that caused him to be paralyzed. (Doc. 44 at ¶ 17). During his pretrial detention, the United States Marshal's Service (USMS) detained Keyes at the Aurora Detention Facility (ADF). (Doc. 44 at ¶ 19). Keyes's condition caused him to be more susceptible to pressure ulcers, also known as bed sores. (Doc. 44 at ¶ 20). Keyes claims that while in

---

[1] Defendants originally filed a motion to dismiss (Doc. 17) on August 21, 2017, along with a motion to stay (Doc. 18). However, Keyes filed an Amended Complaint (Doc. 44) on December 13, 2017, effectively mooting the prior motion to dismiss. On December 26, 2017, Defendants filed a second motion to dismiss, relying on the arguments in their prior motion (Doc. 45).

pretrial detention at ADF he was not provided the proper equipment, including an air mattress, and he was not provided proper wound care. (Doc. 44 at ¶¶ 22-24). From June to July Keyes filed over fifty (50) complaints regarding his medical treatment, including several complaints about the facilities' physician, Dr. Peterson. (Doc. 44 at ¶¶ 24-26). Keyes claims USMS Deputies Fleck and Thomas responded to these complaints by talking to Dr. Peterson and relying on his representations regarding Keyes's medical care. (Doc. 44 at ¶¶ 70-77). Keyes's condition worsened, causing him to have his foot amputated. (Doc. 44 at ¶ 78). Keyes claims that USMS Deputies Fleck and Thomas failed to take anything but a cursory look into Keyes's repeated complaints and chose to ignore the substantial risk that ADF was not addressing Keyes's serious medical needs and instead relied exclusively on the facility's representations that Keyes was receiving adequate medical care. (Doc. 44 at ¶¶ 83-84).

Based on Keyes's medical needs and deteriorating health condition, the Government dismissed the charges against him in mid-November 2016. (Doc. 44 at ¶ 82). Keyes then brought this *Bivens* against Defendants USMS Deputies Fleck and Thomas in their individual capacity. Defendants filed this motion to dismiss asserting that a *Bivens* action is not available in this case and that even if Keyes could assert a *Bivens* action, Defendants are entitled to qualified immunity.

For the following reasons the Court agrees that Keyes may not bring a *Bivens* action against Defendants Fleck and Thomas in this case. Additionally, even if a *Bivens* action is available, the Court finds Defendants are entitled to qualified immunity.

## DISCUSSION

### A. Standard for Motion to Dismiss

"In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

But "dismissal is appropriate where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Al–Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 at 1191. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B. Is there a *Bivens* remedy for Keyes's Claim?

The first issue before the Court is whether Keyes may assert a *Bivens* claim against USMS Deputies Fleck and Thomas in this case. In *Bivens*, the Supreme Court created an implied damages remedy under the constitution and held that plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. § 1983. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* involved Federal Narcotics agents who unlawfully entered and searched an apartment and arrested the occupant. Since *Bivens*, the Supreme Court has implied a cause of action for money damages directly under the Constitution on only two other occasions, a Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979), and in an Eighth Amendment Cruel and Unusual Punishments case, *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855, 198 L. Ed. 2d 290 (2017)

Recently in *Abbasi*, the Supreme Court noted that since its prior cases finding a *Bivens* cause of action, the Court "adopted a far more cautious course before finding implied causes of action." *Id*. (citations omitted). "Given the notable change in the Court's approach to recognizing implied causes of action, [] the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1857 (citations omitted). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of

4

defendants.'" *Id*. (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (refusing to allow *Bivens* suit for Eighth Amendment violations against a private prison operator)). "The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (citation and quotation marks omitted).

### 1. Does Keyes seek a new *Bivens* context

The first question is whether the case presents a new *Bivens* context. The Supreme Court's test is as follows.

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. 1843 at 1859–60.

In this case, Keyes is attempting to assert liability for the USMS's management of medical care for pretrial detainees at private correctional facilities. Keyes claims this case falls within the context of *Carlson v. Green*, 446 U.S. 144 (1980). As previously mentioned *Carlson* found an implied cause of action under the Eighth Amendment allowing a federal prisoner's estate to sue Bureau of Prisons (BOP) guards for failing to

5

treat the prisoner's asthma. *Id*. Keyes asserts that while that claim dealt with an Eighth Amendment claim, that pretrial detainee Fifth Amendment claims are considered under the same set of laws.

However, as the Supreme Court has explained, the fact that the mechanism of injury is the same is not enough. As an example, the Court pointed to its decision in *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), where the plaintiff was seeking damages for Eighth Amendment damages from a private prisoner operator in "almost parallel circumstances" as *Carlson*. *Abbasi*, 137 S. Ct. at 1859. Even though the right and the mechanism of injury were the same as they were in *Carlson*, the Supreme Court held the contexts were different. *Malesko*, 534 U.S. at 70, and n. 4. In *Malesko*, the Supreme Court found that the special factors counseled hesitation and that the *Bivens* remedy was not available. *Id*. at 74.

The Court finds the same analysis is appropriate in this case. First, the constitutional right is different in this case. *Abbasi*, 137 S.Ct. at 1864 ("The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth.") The context of Keyes's claim is different from the context of *Carlson*. In this case, Keyes is attempting to hold two supervisory USMS Deputies responsible for a private facility's actions in providing medical treatment to a pretrial detainee. "[E]ven a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1859–60. This case is more akin to the prisoner abuse claim against the Warden in *Abbasi*, in that Keyes is claiming USMS Deputies Fleck and Thomas were deliberately indifferent to his medical needs in a supervisory capacity. The judicial

guidance available to the USMS Deputies related to their supervisory responsibilities in this context is not well developed. The Court finds these are significant differences creating a new *Bivens* context, requiring the Court to apply the Supreme Court's special factors analysis. *See Abbasi*, 137 S. Ct. at 1859–60.

### 2. Application of Special Factors

Having found Keyes's claim is seeking to apply *Bivens* in a new context, the Court must apply the special factors analysis. "The analysis proceeds along a two-step analytical framework." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 860 (10th Cir. 2016). First, the Court examines whether an "alternative, existing process for protecting the [plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Second, even in the absence of an alternative remedy, "a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id*. (citations and quotation marks omitted).

#### a. Alternative Existing Process

The first issue is whether an existing alternative remedial structure is present. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858. "Thus, in analyzing whether a *Bivens* claim is precluded by an alternative remedy, courts must consider the nature and extent of the statutory scheme created by Congress, and

assess the significance of that scheme in light of the factual background of the case at hand." *Big Cats of Serenity Springs, Inc.*, 843 F.3d at 860–61 (citation omitted).

> Several cases illustrate this analysis. For example, in *Minneci* the Court considered whether prisoners could bring a *Bivens* claim against employees of a privately owned federal prison. The Court found no right of action because a claim "for physical or related emotional harm suffered as a result of [inadequate medical care is] the kind of conduct that state tort law typically forbids." 132 S.Ct. at 624. Because state tort law provided "roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims," the plaintiff had adequate recourse under state tort law. *Id*. at 625. See also *Davis*, 442 U.S. at 245 n.23, 99 S.Ct. 2264 (no state law remedy available).

*Big Cats of Serenity Springs, Inc.*, 843 F.3d at 861.

In this case, Keyes' claims against USMS Deputies Fleck and Thomas relate to their supervision over the actions of the medical staff at ADF. The question is whether there is any redress for these injuries. First, the Court would note that while Keyes was in pretrial custody, he filed more than fifty written complaints and grievances. (Doc. 1 at ¶ 25). During his pre-trial detention he also had access to a defense attorney and the district court, where he was asserting his grievances regarding his medical treatment at ADF. *See United States v. Keyes*, Case No. 16-CR-00195-MSK, (Doc. 14, July 6, 2016 "Motion for Magistrate Judge Reconsideration of Order of Detention"; Docs. 26 and 34, "Joint Motion to Reopen Issue of Detention and for Bond to be Granted" and "Supplement to Joint Motion"). Additionally, he is currently seeking redress against ADF and its employees in state court. He is also seeking relief through the Federal Tort Claims Act (FTCA) against the USMS.

Given the nature of Keyes' claims against USMS Deputies Fleck and Thomas, his grievance procedures while in pretrial detention and his FTCA claim and the availability of state law claims against ADF for his injuries adequately address his claims that Fleck and Thomas should have done more to ensure ADF was meeting his medical needs. As a result, the Court will not expand *Bivens* in this context.

> b. *Special Factors Counsel Hesitation in Expanding Bivens in this New Context*

While the Court found Keyes had, and currently has, an alternative existing process to remedy his injuries, even without an alternative existing process the Court finds special factors prevent expanding *Bivens* in this context. "[E]ven in the absence of an alternative, a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550 (citations and quotation marks omitted). "[I]t is a significant step under separation-of-powers principles for a court to" accept a plaintiff's invitation to "create and enforce a cause of action for damages against federal officials." *Abbasi*, 137 S. Ct. at 1856.

In this case, one of the factors that counsels hesitation is legislative action. As the Court noted in *Abbasi*:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. See 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion

9

> provisions would apply to *Bivens* suits. See *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Abbasi*, 137 S. Ct. at 1865.

Another consideration is the impacts this would have on the USMS's discretion in housing pretrial detainees and the potential for opening the floodgates of litigation regarding the USMS's housing of pretrial detainees at independent facilities. Allowing this claim has the potential to interfere with the USMS's ability to place a significant number of pretrial detainees throughout the country. Keyes is seeking to hold USMS Deputies Fleck and Thomas personally liable for relying on the statements from a medical professional at a private detention facility. If this suit were allowed, individual USMS deputies would be responsible for independently investigating medical treatment claims, rather than relying on the medical professionals at those facilities. This is a significant burden considering the number of pretrial detainees, the number and nature of USMS contracts with various facilities, and the type of facilities available in different areas around the country where the USMS is housing pretrial detainees. Additionally, given the number of pretrial detainees and the significant burden such an obligation would place on individual USMS deputies, this could pose a significant imposition on the administration of housing pretrial detainees. The decision to allow personal liability in this context is more appropriate for Congress, rather than the Court.

The Court finds these factors counsel hesitation and the Court declines Keyes's request to extend *Bivens* to the new context presented in this case. As a result, Keyes's *Bivens* claim against USMS Deputies Thomas and Fleck is dismissed with prejudice.

### C. Qualified Immunity

While the Court finds a *Bivens* claim is not available against USMS Deputies Fleck and Thomas, the Court will also discuss qualified immunity for purposes of the record. The Court finds that even if Keyes could pursue a *Bivens* claim against USMS Deputies Fleck and Thomas, Keyes's claim would be barred by qualified immunity.

Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

Plaintiff bears the burden of establishing defendant's actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). To overcome an official's entitlement to qualified immunity, a plaintiff must show that a constitutional violation occurred and that the right violated was "clearly established." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation marks and citation omitted). To be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the

clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. (quotation marks and citation omitted). The United States Supreme Court has recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (citation and quotation marks omitted).

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

### 1. Standard for Deliberate Indifference Claims

"The constitutional protection against deliberate indifference to a prisoner's serious medical needs, as announced in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment shields prisoners after adjudication), applies to pretrial detainees through the due process clause of the Fourteenth Amendment." *Barrie*

*v. Grand Cty., Utah*, 119 F.3d 862, 867 (10th Cir. 1997)(citations omitted).[2] In *Estelle*, the Supreme Court found a prison violates a prisoner's Eighth Amendment right against cruel and unusual punishment if its "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104, (internal citation and quotation marks omitted). For purposes of a *Bivens* claim "inadvertent failure to provide adequate medical care" is not enough, nor does "a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. at 105, 106. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. at 106.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court sought to define the standard for a claim of deliberate indifference. The Supreme Court set forth a two-pronged test including both a subjective and objective inquiry. *Id*. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. (internal citations omitted). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citations omitted).

---

[2] In this case, Keyes is a federal pretrial detainee, not a state pretrial detainee, therefore, his protections are found in the Due Process Clause of the Fifth Amendment, not the Fourteenth Amendment as claimed by Keyes in his Amended Complaint.

Second, the prison official must have a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (citations omitted). The Tenth Circuit has stated that a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As the Court has previously noted, Keyes's allegations are that USMS Deputies Thomas and Fleck received complaints from various sources regarding Keyes's medical care at ADF, a private facility. Based on these complaints, they consulted with the ADF physician, Dr. Peterson, and relied on Dr. Peterson's statements regarding Keyes's care without further investigation. Other than generalized allegations about the bad behavior of the private prison company (GEO Group Inc.), there are no allegations that USMS Deputies Fleck or Thomas were aware of conflicting physician opinions or other indications that Dr. Peterson was not a qualified physician. USMS Deputies Fleck and Thomas were not at the facility personally receiving requests for medical treatment from Keyes, where they could view him and determine whether to pass those requests along to the medical division. Rather, in this case Keyes was receiving medical care at ADF, but he disputed the quality and effectiveness of that care. Through family and others, Keyes communicated his concerns regarding his medical care to USMS Deputies Fleck and Thomas. Keyes does not allege that USMS Deputies Thomas and Fleck completely ignored these complaints for several months. Rather, he claims they consulted Dr.

Peterson and relied on his assurances regarding Keyes's care rather than performing any additional investigation into those complaints.

It is well established in the Eighth Amendment context that a jail officer is generally entitled to defer to the judgment of a medical professional with regard to the appropriate way to treat an inmate. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (dismissing on summary judgment § 1983 claims against defendants who investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions). In this case, USMS Deputies Fleck and Thomas, who were not present at the jail, received complaints regarding Keyes's medical care. They relayed those complaints to the facility, where the Keyes's treating physician responded and assured Fleck and Thomas that Keyes was receiving adequate medical care and explained why he was not receiving the exact care he requested. Keyes has failed to assert any fact that would indicate that Fleck and Thomas's reliance on those statements was unreasonable. Rather, Keyes asserts that Fleck and Thomas had some additional duty to independently verify these statements. There is no law to support this requirement. Keyes's allegations against Deputies Thomas and Fleck do not assert a violation of his Fifth Amendment rights.

Additionally, even if USMS Deputies Fleck and Thomas somehow violated Keyes's Fifth Amendment rights, those rights were not clearly established. There is no Tenth Circuit or Supreme Court opinion that would put USMS deputies on notice that they have a responsibility to independently verify and investigate statements by medical professionals regarding the medical care afforded pretrial detainees at contract facilities.

The Supreme Court has recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id*. "Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640, (1987)). However, it is not necessary of that "the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. But "in the light of pre-existing law," the unlawfulness of the officer's conduct "must be apparent." *Id*.

Keyes fails to point to established case law particularized to the facts in this case. Rather, Keyes cites only to abstract rights regarding unreasonable reliance on medical professionals. Specifically, Keyes relies on a completely unrelated, unpublished case, *Weatherford v. Taylor*, 347 F. App'x 400 (10th Cir. 2007). In *Weatherford*, a county jail supervisor personally witnessed an inmate having a heart attack and although he begged for help, she refused to provide him medical attention based on the previous comment of a medical provider at the facility that the detainee would be fine until morning because the pain was on the wrong side of his chest. *Id*. at 4. Under those circumstances, the Tenth Circuit found the jailer was potentially liable under § 1983, because "unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs." *Id*. at 4. The circumstances of *Weatherford* illustrate the type of scenario where an official cannot rely on a medical professional, such as when

they are actually witnessing the detainee's symptoms and fail to take action. In this case, neither Fleck nor Thomas was present with Keyes. Rather, they were relaying complaints from Keyes's family and others to the facility's physician, who was then assuring them that Keyes was receiving the appropriate level of care. *Weatherford* does not provide particularized case law supporting Keyes's claim. Additionally, Keyes's cited out-of-circuit cases also fail to provide "clearly established law" on this issue.

For all of these reasons, even if the Court were to recognize a *Bivens* claims in this case, USMS Deputies Fleck and Thomas are entitled to qualified immunity.

## CONCLUSION

For all the following reasons, the Court finds that Keyes cannot bring a *Bivens* claim against USMS Deputies Fleck and Thomas based on the facts in this case. Additionally, even if Keyes could properly assert a *Bivens* claim, USMS Deputies Fleck and Thomas are entitled to qualified immunity on those claims. Finally, the Court finds that allowing Keyes to amend his Amended Complaint is not appropriate in this case. There are no allegations that would support a *Bivens* claim in this context. Additionally, after Defendants filed their motion to dismiss, Keyes amended his Complaint to remove one Defendant who was not a federal employee. However, he did not seek to assert any new allegations based on the arguments in the Motion to Dismiss. As a result, the Court finds that allowing Keyes an opportunity to amend would be futile.

IT IS ORDERED that Defendants' Motion to Dismiss is GRANTED. Keyes' Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion to Stay is MOOT.

Dated this  31st  day of May, 2018.

*/s/ Nancy D. Freudenthal*
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE